# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Pamela H. Beavers,**
**Claimant Below, Petitioner**

**vs.)     No. 21-1005     (**BOR Appeal No. 2056932)
                    (Claim No. 2019013142)

**McDowell County Board of Education,**
**Employer Below, Respondent**


# MEMORANDUM DECISION


Petitioner Pamela H. Beavers appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent McDowell County Board of Education filed a timely response.[1] The issues on appeal are medical treatment and compensability. The claims administrator denied authorization for a pain management referral for cervical injections on September 4, 2019. The claims administrator denied a request to include right C5-C6 protrusion, right C6-C7 protrusion, right C6 radiculopathy and right C7 radiculopathy as compensable conditions on October 7, 2020. The Workers' Compensation Office of Judges ("Office of Judges") affirmed both decisions in its June 4, 2021, order. The order was affirmed by the Board of Review on November 18, 2021. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

On December 12, 2018, petitioner, a secretary, completed an Employees' and Physicians' Report of Injury stating that earlier that same day, she fell on an icy spot in the parking lot of the high school at which she worked. Kelly Belt, PA, completed the Employees' and Physicians' Report of Injury and found that petitioner sustained blunt force trauma to her right arm and shoulder. X-rays were taken. Joseph A. Lambert, II, M.D., suspected a small nondisplaced fracture of the anterior aspect of the greater tuberosity of the proximal right humerus. Petitioner's right arm was placed in a sling, and she was referred to Walid H. Azzo, M.D. Dr. Azzo saw petitioner on December 14, 2018, and found that repeat x-rays did not reveal a fracture. Dr. Azzo diagnosed petitioner with impingement syndrome of the right shoulder. The claims administrator held the claim compensable for right shoulder bursitis on December 19, 2018.

Dr. Azzo treated petitioner from December 14, 2018, to January 15, 2019, by providing injections in her right shoulder. During an office visit on January 11, 2019, petitioner complained

---

[1]Petitioner is represented by Gregory S. Prudich, and respondent is represented by Charity K. Lawrence.

of pain and popping in the posterior area of her cervical spine. Dr. Azzo referred petitioner to Rajesh V. Patel, M.D., for the neck pain. Dr. Azzo also ordered an MRI of the cervical spine. Petitioner underwent an MRI of her cervical spine on January 21, 2019. Cristina Cavazos, M.D., found degenerative disc disease and spondylosis contributing to severe left (not right) neural foraminal narrowing.

Dr. Patel treated petitioner from February 6, 2019, to August 19, 2019. In addition to the right shoulder injury (which was the only condition held compensable), Dr. Patel diagnosed petitioner with a cervical sprain, right-side cervical disc herniations/protrusions at C5-C6 and C6-C7, and right-side radiculopathy at C6 and C7 based upon his own reading of the January 21, 2019, MRI. Dr. Patel recommended an aspen therapeutic collar to help petitioner's neck. The claims administrator granted authorization for an aspen therapeutic collar on February 19, 2019. Dr. Patel also requested authorization for a pain management referral for cervical injections on May 15, 2019.

Petitioner underwent an independent medical evaluation for her compensable right shoulder injury with Joseph E. Grady, II, M.D, on June 17, 2019. Dr. Grady found that petitioner had 1% impairment for her right shoulder. With regard to petitioner's complaints of neck pain, Dr. Grady observed that the January 21, 2019, MRI revealed extensive spondylosis not on the right side, but on the left side where petitioner denied any symptoms. Dr. Grady related any neck discomfort to petitioner's cervical spondylosis.

In a June 27, 2019, physician review report, Rebecca Thaxton, M.D., opined that Dr. Patel's request for authorization for a pain management referral for cervical injections be denied. Neck pain was not reported until a month after the December 12, 2018, occupational injury. Pursuant to West Virginia Code of State Rules § 85-20-35.2.a (2006), the guidelines for adding cervical sprains as compensable injuries were already exceeded. Dr. Thaxton further noted that Dr. Cavazos's impression of the January 21, 2019, MRI of petitioner's cervical spine was of degenerative disc disease and spondylosis.

In a September 4, 2019, protestable decision, the claims administrator denied authorization for a pain management referral for cervical injections. Petitioner timely protested the order. Petitioner testified at deposition on May 6, 2020. Petitioner stated that she hit her right side and her right shoulder when she slipped at her employment on December 12, 2018. Petitioner admitted that she "didn't report the neck pain to any ERs or clinics, or any other doctors before" her third appointment with Dr. Azzo. Petitioner explained that she hoped that the neck pain would go away.

Dr. Patel testified at deposition on July 17, 2020. Dr. Patel stated that it was difficult to determine if there was "a discrete problem" in petitioner's cervical spine given the MRI findings of degenerative disc disease. Dr. Patel opined that a neck injury can cause pain in the shoulder, that a shoulder injury can sometimes cause pain in the neck region, and that "there is an area of overlap between the two, in terms of what someone is going to experience or feel." However, Dr. Patel found that petitioner's symptoms indicated that there was an acute injury. Dr. Patel interpreted the areas at C5-C6 and C6-C7 as herniations/protrusions and stated that, "if there was an acute injury, it would be superimposed upon something chronic." Dr. Patel explained that the

radiologist does not examine the patient in person and that, instead of solely relying on an MRI, a physician must use the patient's symptoms to differentiate between an acute injury and a chronic condition. Dr. Patel clarified that Dr. Cavazos's MRI report did not mention pathology at C5-C6 and C6-C7 on the right side. However, Dr. Patel opined that petitioner's cervical pain resulted from an acute process due to his correlation of petitioner's symptoms to the MRI findings. Dr. Patel stated, given the length of time since petitioner's last appointment with him, a new assessment would be necessary and that it was possible that surgical intervention rather than cervical injections might be indicated depending on the severity of petitioner's symptoms.

Following his deposition, on July 29, 2020, Dr. Patel requested that right C5-C6 protrusion, right C6-C7 protrusion, right C6 radiculopathy and right C7 radiculopathy be added as compensable conditions. In an August 18, 2020, physician review report, Dr. Thaxton recommended that Dr. Patel's July 29, 2020, request for the inclusion of additional compensable conditions in the claim be denied.[2] In an October 7, 2020, protestable decision, the claims administrator denied the request to include right C5-C6 protrusion, right C6-C7 protrusion, right C6 radiculopathy and right C7 radiculopathy as compensable conditions. Petitioner timely protested the order.

Petitioner underwent an independent medical evaluation with Nick Chongswatdi, M.D., on August 25, 2020. Dr. Chongswatdi found that petitioner had 8% impairment due to her compensable right shoulder injury. Dr. Chongswatdi stated that an evaluation of petitioner's neck demonstrated a decreased range of motion, but that he was not asked to provide an impairment rating for the cervical spine.

Petitioner underwent an independent medical evaluation with David L. Soulsby, M.D., on January 26, 2020. Dr. Soulsby found that petitioner had 5% impairment attributable to her right shoulder injury.[3] With regard to the cervical spine, Dr. Soulsby reviewed the January 21, 2019, MRI, which showed no acute fracture or dislocation but revealed multilevel degenerative disc disease. Dr. Soulsby opined that degenerative disc disease and resulting spinal stenosis were preexisting conditions not related to the December 12, 2018, compensable injury. Dr. Soulsby stated that the only indication for cervical injections would be to treat the preexisting degenerative disc disease.

In its June 4, 2021, order, the Office of Judges affirmed the claims administrator's denial of (1) authorization for a pain management referral for cervical injections, and (2) the inclusion of right C5-C6 protrusion, right C6-C7 protrusion, right C6 radiculopathy and right C7 radiculopathy

---

[2]While Dr. Thaxton's August 18, 2020, physician review report is listed as an exhibit in respondent's appendix, we do not find it in the appellate record.

[3]The Board of Review's November 18, 2021, decision also affirmed that part of the Office of Judges's June 4, 2021, order, which reversed a third order of the claims administrator granting petitioner a 1% permanent partial disability award to grant an award of an additional 7% for a total permanent partial disability award of 8% for her right shoulder injury. No party appeals the Board of Review's decision with regard to the permanent partial disability award.

as compensable conditions. The Office of Judges found that the diagnostic testing does not support the contention that the disc protrusions at C5-C6 and C6-C7 were attributable to anything other than petitioner's preexisting degenerative conditions. Therefore, the Office of Judges found that cervical injections were not reasonable and necessary to treat the compensable injury, which did not include a cervical component. The Board of Review adopted the Office of Judges's findings and affirmed its ruling by order entered on November 18, 2021.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we find no error in the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. "Pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." Syl. Pt. 2, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). We held in Syllabus Point 3 of *Gill* that "[t]o the extent that the aggravation of a noncompensable preexisting injury results in a discr[ete] new injury, that new injury may be found compensable." *Id.* at 738, 783 S.E.2d 858. Dr. Cavazos's impression of the January 21, 2019, MRI of petitioner's cervical spine was of degenerative disc disease and spondylosis. Dr. Patel opined that the MRI supported a finding of acute processes superimposed on petitioner's chronic conditions once her symptoms were correlated to the MRI results. However, at her deposition, petitioner admitted that she did not report neck pain to any emergency departments, clinics, or physicians until a month after her December 12, 2018, occupational injury. West Virginia Code of State Rules § 85-20-35.2.a (2006) provides, in pertinent part, that "[t]he onset of neck pain and paraspinal muscle spasm begins either suddenly after the injury occurs or develops gradually over the next 24 hours." Accordingly, we find that the Office of Judges did not err in determining that cervical injections were not reasonable and necessary to treat the compensable injury due to the injury not having a cervical component.

Affirmed.

**ISSUED: September 14, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn